## IN RE ESTATE OF MATHIAS SCHUMACHER.
## JOHN SCHUMACHER AND ANOTHER v.
## ADAM SCHUMACHER.[1]

November 10, 1949.

No. 34,925.

---

[1]Reported in 39 N. W. (2d) 604.

*Marshall S. Snyder* and *W. L. Hursh,* for appellants.
*Carl A. Youngquist,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order of the district court of Hennepin county denying a motion for new trial.

Mathias Schumacher died testate on May 23, 1946, at the age of 82 or slightly more than that. His wife had predeceased him, and he left no children. His heirs-at-law consisted of three brothers, Henry, Adam, and John, one sister, Lena, and several nephews and nieces. His will, executed on April 10, 1946, was admitted to probate over the objections of his brother John. An appeal was taken to the district court by John and W. L. Hursh, who had been named as executor in a former will.

The district court submitted the question of testamentary capacity to a jury by a special interrogatory, which was answered adversely to contestants. The question of undue influence was determined by the court without the aid of a jury. The court found that there was no undue influence. Prior to the making and filing of the court's findings, a motion for leave to reopen the case to permit contestants to introduce additional evidence, which they claimed had been newly discovered, was denied by the court. This appeal followed a subsequent order denying a motion for a new trial.

During his lifetime, Mathias Schumacher made and executed several wills and codicils thereto. Only those made after the death of his wife are material here. The changes upon which contestants

predicate their claim of undue influence relate principally to shares of the estate ultimately going to the three brothers, Henry, Adam, and John, and the actions of Henry and Adam leading up to the making of the final will. The first of the wills involved was executed on January 22, 1944. Thereunder, Henry, Adam, John, and the sister, Lena, were all treated alike, each being left $500. The residue of the estate was left to all those who received specific money bequests in the same proportion as the specific bequests. W. L. Hursh, who acted as attorney in drafting the will, was named as executor.

The next will was likewise prepared by Mr. Hursh and was executed on August 18, 1945. Adam Schumacher was named as executor. Henry, Adam, John, and Lena were again each bequeathed $500. The residue was left to those who received specific bequests of $50 or more in the same proportion as the money bequests, with certain named exceptions which are not material here. The three brothers and the sister, under this residuary clause, would have shared equally in the residue.

Up to that time, it appears that Hursh had acted as attorney for Mathias for a number of years. He then had some litigation pending. On March 20, 1946, Mathias, together with his brother Henry, called on attorney Lawrence R. Allison and discussed with him the litigation which Hursh had been handling. It appears that Mathias was not satisfied with the progress that was being made in the disposition of this litigation. While they were in Allison's office, Henry was sent to the office of Mr. Hursh, and he there procured some papers relating to this litigation and also Mathias's will. Mathias had not previously been acquainted with Allison, but Henry had known him for some time. Allison had also been recommended to Mathias by his banker at Hamel. After consulting with Mathias, a codicil to his will of August 18, 1945, was drawn by Allison and executed by Mathias on the same date. Allison testified that all information regarding the desired changes to be made by the codicil was obtained from Mathias. In this codicil, Henry and Adam were each given $800, the sister, Lena, $500, and John, $100. No change

was made with respect to the residue; consequently John would have shared in the residue to some extent. Some other changes were made, which are not particularly significant in determining the questions now before us. On the next day, Mathias and Henry returned, and Mathias signed a substitution of attorney in the litigation above mentioned, whereby Allison replaced Hursh. In the meantime, Allison had discussed the matter with Hursh and had been informed that Hursh would have no objection to such substitution. On April 3, 1946, Mathias again returned and informed Allison that he had sold some real estate which had been included in the will and that he therefore wished to make some further changes in his will. Accordingly, a second codicil was prepared. At the same time, a deed to the real estate which had been sold was drawn by Allison and executed by Mathias, and some further discussion was had concerning the litigation Allison was now handling. Under the codicil then prepared, Henry and Adam were each given $1,000, and some other provisions of the will were changed. The residuary clause was changed so that only those who received $500 or more in specific bequests would share in the residue. This effectively cut John out of any share in the residue.

On April 8, 1946, Mathias returned once more. Henry and Adam were with him on this occasion. Mathias informed Allison that he did not like the codicils which had been drawn, but desired to have the whole will redrafted. He informed Allison that he planned on going to an old people's home to live and that he wanted everything taken care of before he went. Allison thereupon went over the will and codicils, paragraph by paragraph, and procured the information respecting the desired changes that he needed in order to redraft the will. Neither Henry nor Adam took part in the conference, nor were they present in the office while this discussion took place, although they were in close proximity in an outer office or in the hall. Mathias was told to come back in a few days, when the draft would be ready for his signature. On April 10 Mathias returned, Henry and Adam again accompanying him. The will was read to Mathias by Allison. Neither Henry nor Adam was in the

office at the time. Thereafter, it was executed in the presence of Allison and his secretary, who were the only persons present during its execution except Mathias himself. Under the terms of this will, Henry and Adam were each given $1,200, the sister, Lena, $500, and John $100. The residue was given to those who were given specific bequests of $500 or more. A short time after the execution of this will, Mathias became ill and went to a hospital, where he died May 23, 1946.

Prior to his death, Mathias transferred to himself and Adam jointly several bank accounts which he had in banks at Hamel, Delano, and Maple Plain and an account with the Minneapolis Savings & Loan Association. In transferring these accounts, it appears that Mathias called at the bank in one case, and in the other cases Adam procured the necessary papers, which were signed by Mathias while he was in the hospital, after which the papers were returned to the bank by Adam. Adam readily admitted both in the probate court and in the district court that the funds belonged to the estate and not to Adam personally.

Henry and Adam lived near Mathias, while John resided in Minneapolis and was incapacitated himself. It appears that Henry and Adam were quite intimate with Mathias, but that Mathias seldom saw John.

This appeal does not challenge the jury's verdict as to testamentary capacity. It raises two questions:

(1) Does the evidence sustain the court's finding that there was no undue influence?

(2) Did the trial court abuse its discretion in denying contestants' motion to reopen the case at the close thereof for the purpose of submitting newly discovered evidence, which motion was made before findings had been made by the court?

■ It is elemental that the burden of proving that a will was induced by undue influence is on the contestant. In re Estate of Mollan, 181 Minn. 217, 232 N. W. 1; also, that the findings of a

trial court will not be disturbed on appeal unless manifestly contrary to the evidence.

The legal principles to be applied in determining whether the evidence sustains the court's findings on the question of undue influence are so well stated and the authorities so well collected in In re Estate of Mazanec, 204 Minn. 406, 283 N. W. 745, that we see no need of restating them here. Viewing the evidence in the light of the principles so announced, it is clear that the court's finding that there was no undue influence is amply sustained by the evidence. About all that can be said is that Henry and Adam had the opportunity to exert their influence upon Mathias. There is no evidence that they did so or that Mathias was a man who could be influenced. It is true that he was a man well advanced in years. The jury found that he was mentally competent to make a will. All the evidence indicates that he was in control of his mental faculties. The jury's verdict is not challenged. Mere suspicion is not enough to justify setting aside a will on the grounds of undue influence. The mere fact that Mathias, by his successive wills and codicils, kept increasing the share that would go to Henry and Adam and decreasing that which went to John does not compel a conclusion of undue influence. Henry and Adam were close to Mathias and assisted him almost constantly. John was farther away and seldom seen. It is not strange that Henry and Adam were favored under the circumstances. The case is readily distinguishable from cases such as In re Estate of Stephens, 207 Minn. 597, 293 N. W. 90, where the testator was a person of weakened mentality and easily susceptible to the influence of others. It would serve no useful purpose to attempt to distinguish other cases unlike the present case on the facts. After all, each case must be tested on its own facts in the light of the legal principles applicable to the case.

The next contention of contestants is that the court abused its discretion in denying their motion to reopen the case in order that they might be permitted to submit additional testimony of the witnesses Mary Roehl and Emma Kauth. Emma Kauth was a niece of

Mathias, with whom he had lived for a period of time shortly prior to going to the hospital. The affidavit of Mary Roehl, in support of the motion, so far as here material, states:

"That she is well acquainted with Emma Kauth; and that on Sunday, January 27th, 1946, affiant and her husband went to the home of said Emma Kauth to see and visit with Mathias Schumacher who was then living at the home of said Emma Kauth near Loretto, Minnesota;

"That when affiant arrived at said home, she found that a card party was in progress and that a number of persons were there, among whom were Adam Schumacher, Henry Schumacher and their wives;

"That said Emma Kauth took affiant into a bedroom in order that affiant might lay aside her wraps and that while in said bedroom, Emma Kauth closed the bedroom door and began to talk about Mathias Schumacher;

"That said Emma Kauth said that she had seen a copy of the Will of Mathias Schumacher and wished to know whether affiant had seen it; and that affiant said that she had not seen it;

"That said Emma Kauth then said, 'We have been trying to get Math to change his will but can't do it. He is too darn stubborn. He says the will he has is good enough for him';

"That Mathias Schumacher was unable to shuffle and deal the cards when they were playing that day and appeared to be failing;

"That a few days before Mathias Schumacher went to the old folks home on April 10th, 1946, affiant was again at the home of said Emma Kauth; and that at that time Mathias told affiant that he was no longer able to look after his business and that thereafter she would have to do business with Adam Schumacher; that at that time Mathias Schumacher owned a mortgage executed by affiant and her husband to him."

Other affidavits in support of the motion mainly corroborate the affidavit of Mary Roehl. Both Mary Roehl and Emma Kauth appeared as witnesses in the probate court and in the district court

and were examined and cross-examined. The counter affidavit of Emma Kauth unequivocally denies making the statement attributed to her by the affidavit of Mary Roehl.

The matter of reopening a case to permit the taking of additional or newly discovered evidence rests largely in the discretion of the trial court. We do not believe that there was any abuse of discretion here. Even assuming that the evidence proposed by the affidavits in support of the motion was admissible, there is no reason to believe that it would be more persuasive in determining the question of fact before the court than it was in determining the motion in the light of the counter affidavits, which deny the alleged statements, and the further fact that both witnesses had appeared and had been examined and cross-examined by attorneys for the proponents and contestants of the will.

Affirmed.

---

[1]Reported in 39 N. W. (2d) 601.